IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

WADE ROBINSON,

       Plaintiff,

v.

WICHITA STATE UNIVERSITY, et al.,

       Defendants.

Case No. 16-cv-2138-DDC-GLR

**MEMORANDUM AND ORDER**

This matter is before the court on defendant Registry for College and University Presidents, a Division of Collegiate Enterprise Solutions, LLC's ("Registry") Motion to Dismiss (Doc. 7); defendants John Bardo and Wichita State University's ("WSU") (together "the WSU defendants") Motion for Judgment on the Pleadings (Doc. 23) and Motion to Stay Discovery (Doc. 25); and plaintiff Wade Robinson's Motion to Amend Complaint (Doc. 36). For reasons explained below, the court grants plaintiff's Motion and denies the defendants' Motions as moot.

**I.**     **Background**

Because Registry has moved to dismiss plaintiff's claims under Fed. R. Civ. P. 12(b)(6), the court takes the following facts from plaintiff's Complaint and accepts them as true. *See SEC v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014).

Plaintiff filed his Complaint on March 2, 2016. In it, he alleges violations of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), the Due Process Clause of the Fourteenth Amendment, and Kansas state law. Plaintiff's claims arise from the time he spent working for WSU. Plaintiff served as Vice President for Campus Life and University Relations from July 2009 to July 2014.

1

In April 2013, plaintiff learned about an alleged rape by someone on the WSU men's basketball team.  The alleged rape occurred shortly after the team's trip to the Final Four in the 2013 NCAA basketball tournament.  Plaintiff alleges that the WSU President, John Bardo, and Athletic Director failed to inform him and WSU's General Counsel Ted Ayers about the rape for several days after the alleged rape occurred.  Plaintiff did not learn about the alleged rape until the Wichita Police Department made a public statement on April 25, 2013.  On April 27, 2013, plaintiff requested a meeting with President Bardo, the Athletic Director, and General Counsel to raise his concerns about WSU's alleged failure to comply with Title IX.  After this meeting, plaintiff began to investigate the incident.

Plaintiff asked the Associate Athletic Director for help getting the alleged perpetrator to talk with him as part of the investigation.  The Associate Athletic Director apparently told plaintiff it was not the right time to bother this person but that he would help at the right time.  Then, plaintiff learned about another alleged rape—this one purportedly by a member of the WSU men's track team—in January 2014.  Plaintiff met with this alleged perpetrator twice, first in March 2014 and later in July 2014.  In March, plaintiff emailed President Bardo's executive team with plans to launch an initiative to end sexual violence on the WSU campus.

Plaintiff alleges that President Bardo threatened his job twice—once in May 2013 and again in April 2014.  In July 2014, he was demoted from his position as Vice President of Campus Life to Vice President of Student Engagement.  As part of his demotion, plaintiff was moved to an "inadequate office facility."  Doc. 1 at 4.

In January 2015, plaintiff reported to President Bardo, University Provost Tony Vizzini, and General Counsel that the alleged victim of the January 2014 alleged rape planned to make a formal complaint.  Also, plaintiff informed them that he planned to proceed with a formal Title

IX investigation.  Plaintiff also informed his superiors about a possible Code of Conduct violation involving members of the men's basketball team, and that a reporter was investigating alleged sexual assaults on the WSU campus.  Three days later, plaintiff was informed that WSU was terminating his employment, effective on June 30, 2015.

Plaintiff met with President Bardo on February 5, 2015 to discuss his termination.  Apparently, President Bardo informed plaintiff he was displeased with the admissions process, that plaintiff was too loyal to his staff, that plaintiff was a "big man with a loud voice and the Shocker Hall costs got away from him."  *Id.* at 6.  On March 2, 2015, Registry published an announcement seeking applicants for the Vice President for Student Affairs position at WSU.  The announcement stated that "the incumbent is aware he is leaving at the end of the academic year or sooner; the incumbent does not fit with the culture of the executive leadership team," and that the "current operation is too hierarchal and punishment-centered."  *Id.*  Plaintiff was provided written notice of his termination on April 3, 2015.

On May 9, 2015, *The Wichita Eagle* newspaper reported plaintiff's termination.  Part of this article included a conversation between President Bardo and the Student Body President, Matt Conklin.  According to the article, President Bardo told Mr. Conklin that there were three reasons for plaintiff's termination:  first, that the "student process is too punitive in nature rather than educational as it should be"; second, that the student affairs department "had improperly allocated finances"; and, finally, that the student affairs office is "too bureaucratic in nature."  *Id.*  The same article also quoted Registry's announcement asserting that "[t]he current operation is too hierarchal and punishment-centered."  *Id.* at 7.

On June 1, 2015, plaintiff learned that President Bardo had been telling others that plaintiff lacked the credentials to be Vice President for Campus life back when he was hired in April 2009. Plaintiff's termination took effect on June 30, 2015.

In his claims, plaintiff claims that WSU retaliated against him for "opposing the inaction of WSU to incidents of alleged rape by" WSU students. *Id.* at 10. Plaintiff claims that President Bardo violated his Due Process rights when he made defamatory statements and retaliated against plaintiff. Plaintiff also brings state law defamation and invasion of privacy claims against President Bardo and Registry, and claims that Registry violated the Kansas Open Records Act. Plaintiff seeks actual, compensatory, and punitive damages as well as an award of attorney's fees and expenses.

Registry filed its Motion to Dismiss for Failure to State a Claim (Doc. 7) on April 12, 2016. This motion became ripe on May 24, 2015. The WSU defendants filed a Motion for Judgment on the Pleadings (Doc. 23) on May 27, 2016. Plaintiff responded (Doc. 31). The WSU defendants also filed a Motion to Stay Discovery (Doc. 25). And on July 7, 2016, before the WSU defendants filed their replies, plaintiff filed a Motion to Amend Complaint (Doc. 36).

## II.     Analysis

This Order addresses plaintiff's Motion to Amend Complaint first because, if the court were to grant this motion, it would render Registry's Motion to Dismiss and the WSU defendants' Motion for Judgment on the Pleadings and Motion to Stay Discovery moot.

### A. Plaintiff's Motion to Amend Complaint

Plaintiff asked the court to grant leave to amend his Complaint on July 7, 2016—86 days after Registry filed its Motion to Dismiss, and 41 days after the WSU defendants filed their Motion for Judgment on the Pleadings. Plaintiff's proposed Amended Complaint does not add

4

any new claims, parties, or theories of liability; instead, it alleges additional facts about his employment at WSU and "make[s] explicit inferences and simple extrapolations already suggested by the present pleadings." Doc. 37 at 2.

Rule 15(a)(2) provides that courts should "freely give leave [to amend] when justice so requires." The decision whether to grant leave to amend is within the court's discretion. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971); *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006). "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993) (citations omitted). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal for any reason . . . ." *Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1239–40 (10th Cir. 2001) (citations omitted).

### 1. The WSU Defendants' Response to Plaintiff's Motion to Amend

The WSU defendants do not argue futility, bad faith, undue delay, or prejudice for reasons to deny plaintiff's Motion to Amend. Instead, the WSU defendants contend that there are "sound reasons" for the court to grant plaintiff's Motion subject to certain conditions—namely, ordering plaintiff to explain why he requests leave to amend *now*. Doc. 42 at 2. In support of their argument, the WSU defendants explain that plaintiff filed his Motion to Amend "at nearly the last moment." *Id.* at 2. The WSU defendants assert that the defendants have "spent considerable resources demonstrating that the claims lack merit" and plaintiff repeatedly has asserted that his claims are viable. *Id.* at 2–3; *see also* Docs. 17, 31, 32 (plaintiff's responses). The WSU defendants also contend that plaintiff filed his Motion to Amend when the

5

WSU defendants were days away from filing their reply brief, and the proposed amendments, if permitted, will delay and increase the costs of proceeding. Doc. 42 at 3. But, in the end, the WSU defendants do not oppose plaintiff's Motion. They merely ask that the court require plaintiff to explain why he is requesting leave to amend.

In his Reply, plaintiff asserts that his Motion was not fueled by dilatory motives. Instead, plaintiff contends that "the press of litigation and the tremendous amount of work" in "debunking [d]efendants' Motion to Dismiss" caused his delay. Doc. 43 at 5.

No scheduling order has been entered in this case. And the WSU defendants have not shown how they will sustain prejudice if the court grants plaintiff leave to amend. Plaintiff's amendments provide additional detail to the facts underlying his allegations. At this early stage of the litigation, the court concludes that the better course is to allow the amended complaint.

### 2. Registry's Opposition to Plaintiff's Motion to Amend

Unlike the WSU defendants, Registry asserts that the court should deny plaintiff's Motion to Amend because amendment would be futile. Registry filed its Motion to Dismiss plaintiff's Complaint on April 12, 2016. Plaintiff's Amended Complaint inserts two allegations, neither of which, Registry contends, is material. If a party opposes a motion for leave to amend solely on the basis that the amendment would be futile, the court may exercise its discretion to "allow the amendment . . . [so long as] the party opposing it will have an opportunity to challenge the sufficiency of newly added claims through a motion to dismiss." *Koehler v. Freightquote.com, Inc.*, No, 12-2505-KHV-GLR, 2013 WL 3878170, at *4 (D. Kan. July 26, 2013).

Exercising its discretion, the court grants plaintiff's Motion to Amend his Complaint for claims against Registry. If indeed plaintiff's Amended Complaint does not materially change his

6

claims against Registry, Registry will not sustain prejudice.  Registry will have an opportunity to challenge the sufficiency of plaintiff's claims in a renewed Motion to Dismiss, one that may not require many modifications from its currently pending Motion.

The court thus grants plaintiff's Motion to Amend.  As a result, Registry's Motion to Dismiss, and the WSU defendants' Motion for Judgment on the Pleadings, are denied, without prejudice, as moot.  And, because the WSU defendants' Motion to Stay the Proceedings (Doc. 25) relies on their Motion for Judgment on the Pleadings, the court thus denies it too, without prejudice, as moot.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's Motion for Leave to Amend the Complaint (Doc. 36) is granted.

**IT IS FURTHER ORDERED BY THE COURT THAT** defendant Registry's Motion to Dismiss for Failure to State a Claim (Doc. 7) is denied, without prejudice, as moot.

**IT IS FURTHER ORDERED BY THE COURT THAT** the WSU defendants' Motion to Stay Discovery (Doc. 25) is denied, without prejudice, as moot.  Their Motion for Judgment on the Pleadings (Doc. 23) is denied, without prejudice, as moot.

**IT IS SO ORDERED.**

Dated this 24th day of February, 2017, at Topeka, Kansas.

s/ Daniel D. Crabtree
**Daniel D. Crabtree**
**United States District Judge**