IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

WADE ROBINSON,

        Plaintiff,

v.

WICHITA STATE UNIVERSITY, et al.,

        Defendants.

Case No. 16-cv-2138-DDC-GLR

## MEMORANDUM AND ORDER

This matter comes before the court on defendant The Registry for College and University Presidents' ("the Registry") Motion to Dismiss First Amended Complaint or, in the Alternative, for Judgment on the Pleadings (Doc. 50). The Registry filed a Motion to Dismiss on April 12, 2016 (Doc. 7), but that motion was moot after the court granted plaintiff's Motion to Amend the Complaint (Doc. 47). The Registry filed this Motion on March 28, 2017. Plaintiff filed a Memorandum in Opposition (Doc. 53) and the Registry replied (Doc. 54). For reasons explained below, the court grants the Registry's Motion to Dismiss under Fed. R. Civ. P. 12(b)(6).

**I.    Background**

The following facts are taken from plaintiff's First Amended Complaint (Doc. 48) and viewed in the light most favorable to him. *Ramirez v. Dep't of Corr.*, 222 F.3d 1238, 1240 (10th Cir. 2000) (explaining that the court must "accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff" (citation omitted)).

Plaintiff worked for Wichita State University ("WSU") as Vice President for Campus Life and University Relations from July 2009 to July 2014. In July 2014, he was demoted from his position as Vice President of Campus Life to Vice President of Student Engagement. Then,

1

in January 2015, WSU informed plaintiff that it was terminating his employment, effective on June 30, 2015.

On March 2, 2015, the Registry printed an announcement seeking applicants for the Vice President for Student Affairs position at WSU. The announcement stated that "the incumbent is aware he is leaving at the end of the academic year or sooner; the incumbent does not fit with the culture of the executive leadership team," and the "current operation is too hierarchal and punishment-centered." *Id.*

Plaintiff brings claims against WSU, John Bardo (WSU's president), and the Registry. Plaintiff claims WSU violated 20 U.S.C. § 1681 (Title IX) by retaliating against him for investigating alleged rapes on campus. Plaintiff also brings a 42 U.S.C. § 1983 claim against Mr. Bardo for violating his Due Process rights under the Fourteenth Amendment. Finally, plaintiff brings state common law and statutory claims against WSU, Mr. Bardo, and the Registry.

The Registry moves to dismiss plaintiff's Kansas common law claims against it. The court has jurisdiction over plaintiff's federal claims under 28 U.S.C. § 1331 ("district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). And, 28 U.S.C. § 1367 provides: "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966) (holding that a district court has "[p]endent jurisdiction" over state law claims in a case if subject matter jurisdiction exists over the federal claim and the "state and federal claims [ ] derive from a common nucleus

of operative fact."). Plaintiff's common law claims against the Registry revolve around the same operative facts as its federal claims against WSU and Mr. Bardo. The court thus has jurisdiction over plaintiff's common law claims against the Registry under § 1367. The court now turns to the Registry's Motion to Dismiss.

II. **Legal Standard**

The Registry moves to dismiss the case under Fed. R. Civ. P. 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although this Rule "does not require 'detailed factual allegations,'" it demands more than "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Under this standard, 'the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.'" *Carter v. United States*, 667 F. Supp. 2d 1259, 1262 (D. Kan. 2009) (quoting *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)).

On a motion to dismiss under Rule 12(b)(6)—like this one—the court assumes that a complaint's factual allegations are true, but need not accept mere legal conclusions as true. *Id.* at 1263. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

3

statements" are not enough to state a claim for relief. *Iqbal*, 556 U.S. at 678. In addition to the complaint's factual allegations, the court also may consider "attached exhibits and documents incorporated into the complaint by reference." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citations omitted).

The Registry also moves for judgment on the pleadings. A party may move for judgment on the pleadings under Fed. R. Civ. P. 12(c) after the pleadings are closed but early enough not to delay trial. Fed. R. Civ. P. 12(c). Courts evaluate a Rule 12(c) motion under the same standard that governs a Rule 12(b)(6) motion to dismiss. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 n.2 (10th Cir. 2002) (citing *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000)).

### III. Analysis

Kansas law governs plaintiff's common law claims. The parties do not dispute that Kansas law governs plaintiff's common law claims against the Registry. Indeed, the Registry, in its Motion to Dismiss, and plaintiff, in his Opposition, cite Kansas law. Additionally, choice of law rules dictate that the court apply Kansas law. "A federal court sitting in diversity [jurisdiction] applies the substantive law, including choice of law rules, of the forum state.'" *BancOklahoma Mtg. Corp. v. Capital Title Co., Inc.*, 194 F.3d 1089, 1103 (10th Cir. 1999). "This rule also applies when a federal court exercises supplemental jurisdiction over state law claims in a federal question lawsuit"—as is the case here. *Id.* (quoting *Glennon v. Dean Wittter Reynolds, Inc.*, 83 F.3d 132, 136 (6th Cir. 1996)). Kansas is the forum state in this case, and Kansas applies the "law of the 'place of the wrong'" in tort claims. *Atchison v. Casting Corp. v. Dofasco, Inc.*, 889 F. Supp. 1445, 1455 (D. Kan. 1995). "The 'place of the wrong' is that place where the last event necessary to impose liability took place.'" *Id.*

4

The place of the last event necessary to impose liability against the Registry was Kansas. Plaintiff alleges defamation and invasion of privacy claims against the Registry. Both of these claims protect against harm to a person. *See Gruschus v. Curtis Publ'g Co.*, 342 F.2d 775, 776 (10th Cir. 1965) (discussing the basis for defamation and invasion of privacy claims). Plaintiff is a Kansas resident, thus the place of the wrong was Kansas. So, the Kansas law governs plaintiff's state law claims.

The Registry asserts that plaintiff fails to state a claim upon which relief can be granted for each of his claims against it. The court addresses each claim, separately, below.

### A. Defamation

An actionable defamation claim under Kansas law requires the plaintiff to allege: (1) the defendant wrote false and defamatory statements; (2) the defendant communicated these statements to a third party; and (3) the plaintiff's reputation was injured as a result of the statements. *See El-Ghori v. Grimes*, 23 F. Supp. 2d 1259, 1269 (D. Kan. Sept. 24, 1998); *see also Luttrell v. United Tel. Sys., Inc.*, 683 P.2d 1292, 1293 (Kan. Ct. App. 1984). Plaintiff alleges the Registry defamed him when it printed the following three statements: (1) "the incumbent is aware he is leaving at the end of the academic year or sooner"; (2) "the incumbent does not fit with the culture of the executive leadership team"; and (3) "the current operation is too hierarchical and punishment-centered." Doc. 53 at 5. Specifically, plaintiff claims that the third statement was defamatory. Plaintiff alleges the Registry published this statement to its members and his reputation was damaged as a result.

The Registry asserts that plaintiff's defamation claim fails for two reasons.[1] First, the Registry claims the alleged defamatory statement does not identify plaintiff personally. Second,

---

[1] In its Motion, defendant asserts a third argument—truth as a defense to plaintiff's defamation claim. The Registry contends the first two statements in its publication—"the incumbent is aware he is leaving at the end of the

the Registry claims the alleged defamatory statement is a statement of opinion, and cannot be defamatory as a matter of law. The court addresses both arguments, in turn, below.

### 1. Whether the statement identifies plaintiff

An alleged defamatory statement must concern the lawsuit's plaintiff, or reasonably be understood to refer to plaintiff. *See* Restatement (Second) of Torts § 564 (1977); *see also Hale v. Emporia State Univ.*, 2016 WL 3277264, at *9 (D. Kan. June 15, 2016) ("To be defamatory, a statement must be of and concerning the plaintiff."). Here, the Registry contends no one reasonably can interpret the statement to refer to plaintiff because the statement refers only to "the current operation." Doc. 54 at 2.

The court disagrees. The statement is susceptible to a reasonable interpretation that references plaintiff. Though plaintiff only alleges that the third statement is defamatory— "the current operation is too hierarchical and punishment-centered,"— the court reads it in context. The two statements printed before the alleged defamatory statement identify "the incumbent." Doc. 53 at 5. Plaintiff was the only incumbent Vice President of Student Affairs at WSU when the Registry printed the statements. And, the alleged defamatory statement refers to "the current operation." Doc. 53 at 5. Plaintiff, as the incumbent Vice President of Student Affairs, was in charge of, the "current operation." Read in context, the alleged defamatory statement that "the current operation is too hierarchical and punishment-centered" is at least susceptible to an interpretation that references plaintiff.

The Registry asserts that the third statement has an expressly different subject than the first two statements because it refers only to "the current operation." Doc. 54 at 3. The Registry

---

academic year or sooner" and "the incumbent does not fit with the culture of the executive leadership team"—are true, and thus cannot provide the basis for a defamation claim. In plaintiff's Opposition, he concedes that only the last statement—"the current operation is too hierarchical and punishment-centered"—is defamatory. Because the parties agree the first two statements are not at issue on plaintiff's defamation claim, the court addresses only the third statement.

also contends that the purpose of the Registry's publication was to communicate information to its members about the Student Affairs environment at WSU—one that was "too hierarchical and punishment-centered," and reflected systemic issues within WSU. Doc. 54 at 4. That may be so, but another reasonable interpretation of the statement is that it refers to plaintiff and the way he had run the Student Affairs operation. The court thus concludes that the alleged defamatory statement is susceptible to a reasonable interpretation referencing plaintiff.

### 2. Whether the statement is of fact or opinion

Statements of personal opinion or hyperbole are not defamatory under Kansas law. *See Byers v. Snyder*, 237 P.3d 1258, 1271 (Kan. Ct. App. 2010) (discussing *Gatlin v. Hartley, Nicholson, Hartley & Arnett, P.A.*, 26 P.3d 1284 (Kan. Ct. App. 2001)). "Whether a given statement constitutes an assertion of fact or an opinion is a question of law to be determined by the court." *Rinsley v. Brandt*, 700 F.2d 1304, 1309 (10th Cir. 1983). The Registry asserts the statement that the current operation was "too hierarchical" and "punishment-centered" concerns "subjective viewpoints" about the "character of the 'current operation' at the university," rather than objective, verifiable circumstances. Doc. 54 at 6.

Kansas law distinguishes between fact and opinion statements. In *Gatlin v. Hartley*, the Kansas Court of Appeals held that the statement, "[The husband] isn't . . . totally innocent in all this, there are things about him you don't know," was a statement of personal opinion and thus could not be defamatory. *Gatlin*, 26 P.3d at 1284, 1287. In *Byers v. Snyder*, the Kansas Court of Appeals held that statements describing plaintiff staggering and smelling strongly of alcohol were a "recounting of objective observations, not opinion and hyperbole," and thus could be defamatory. *Snyder*, 237 P.3d at 1271.

7

Plaintiff contends that the statement that the current operation was "too hierarchical" and "punishment-centered" is not opinion or hyperbole, and even if it is, it is still actionable as defamation. Doc. 53 at 6. Plaintiff supports his position by citing *Schwartz v. American College of Emergency Physicians*, 215 F.3d 1140, 1145 (10th Cir. 2000) ("Certain expressions of opinion implicitly contain an assertion of objective fact, and such statements are not exempt from a defamation claim." (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18–19 (1990))).

In *Schwartz*, the Tenth Circuit considered whether the statement that the plaintiff was "being sued for stock fraud" was capable of being defamatory. *Schwartz*, 215 F.3d at 1146. The Tenth Circuit, applying New Mexico's substantive law, applied the following standard: "To determine whether the statement is one of fact or opinion, we first inquire whether a reasonable factfinder could conclude that" the statement impliedly asserted a fact. *Schwartz*, 215 F.3d at 1146. It also considered "whether the publication of the statement" was "sufficiently factual to be susceptible of being proved true or false." *Id.* The Circuit determined that the statement implied the plaintiff might have engaged in stock fraud and was "sufficiently factual to be susceptible of being proved true or false" that it supported a defamation claim. *Id.*

The court applies Kansas law here, but still, the *Schwartz* standard is informative. The statement that WSU's Student Affairs operation was "too hierarchical" and "punishment-centered" amounts to an opinion and hyperbole, and not defamation. It is more like the statement in *Gatlin*, that the plaintiff was "[not] totally innocent," than the statement in *Snyder* about plaintiff staggering and smelling like alcohol. *See Gatlin*, 26 P.3d at 1284, 1287; *see also Snyder*, 237 P.3d at 1271. The plain language of the statement—that the operation was "too" hierarchal and "too" punishment-centered—reflects subjective opinion that is not sufficiently factual to prove it is true or false. No one can verify factually whether the WSU Student Affairs

operation under plaintiff's leadership was "too hierarchal" or "[too] punishment-centered" in the way one could verify whether plaintiff had staggered and smelled of alcohol like the *Snyder* plaintiff. Because the statement consists of opinion and hyperbole—and not fact—the court concludes that it cannot provide the requisite fact used to support a defamation claim. Plaintiff's First Amended Complaint thus fails to state a defamation claim upon which relief can be granted.

### B. Invasion of Privacy

Plaintiff also brings an invasion of privacy claim. Kansas law recognizes the invasion of the right to privacy as "a tort upon which a cause of action may be based." *Froelich v. Adair*, 516 P.2d 993, 995 (Kan. 1973). "The invasion of the right to privacy comprises four distinct kinds of tort" that are "tied together by a common name." *Id.* They are: (1) intrusion upon seclusion; (2) appropriation of name or likeness; (3) publicity given to private life; and, (4) publicity placing person in false light. *Id.* at 995–96. In his First Amended Complaint, plaintiff does not specify which of the four distinct brands of invasion of privacy he asserts. When read carefully, one can discern that plaintiff's First Amended Complaint asserts three types of invasion of privacy claims: (1) publicity given to private life; (2) intrusion upon seclusion; and, (3) publicity placing person in false light. Specifically, the First Amended Complaint makes these allegations: (1) "Defendant Registry gave publicity to the private matter described in the Background Facts," (2) "Defendant Registry intentionally intruded upon the solitude or seclusion of Plaintiff or his private affairs or concerns," (3) "Defendant Registry's publicity placed Plaintiff in a false light that would be highly offensive to a reasonable person by misrepresenting Plaintiff's character and activities, namely creating the false impression that Plaintiff was too hierarchical and punishment-centered." Doc. 48 ¶¶ 147, 149, 151.

### 1. Publicity Given to Private Life

Publicity given to private life recognizes liability for "[o]ne who gives publicity to matters concerning the private life of another, of a kind highly offensive to a reasonable man." *Id.* at 996. An actionable publicity given to private life claim under Kansas law requires the plaintiff allege: (1) the defendant gave publicity to a matter concerning his private life; (2) the matter was such that it would be highly offensive to a reasonable person; and (3) it was not of legitimate concern to the public. *Werner v. Kliewer*, 710 P.2d 1250, 1256 (Kan. 1985).

The Registry asserts plaintiff's publicity invasion of privacy claim fails for three reasons. First, the Registry asserts plaintiff is a public official, and that public officials have no right to privacy for the way they conduct themselves in office. Second, the Registry asserts its publication did not disclose any private facts. Third, the Registry asserts it did not publicize the information to the public at large. The court addresses each argument, in turn, below.

The Supreme Court of Kansas has held that public officials do not have a right to privacy for the manner "in which [they] conduct[ ] [themselves] in office." *Rawlins v. Hutchinson Pub. Co.*, 218 Kan. 295, 301 (Kan. 1975); *see also Rinsley v. Brandt*, 446 F. Supp. 850, 857 (D. Kan. 1977) *aff'd on other grounds*, 700 F.2d 1304 (10th Cir. 1983) ("While plaintiff has not waived his right to keep private details of his life secret, he cannot shelter from public scrutiny his administration of a public position in a field of critical public interest."). The Registry contends plaintiff was a public official when it printed the statements. The Registry also asserts that because plaintiff worked as Vice President of Student Affairs at a publically-funded university, he was a public official and thus had no right to privacy for how he conducted himself in office. Doc. 51 at 7.

### a. Public official

The court considers all relevant circumstances to determine whether plaintiff was a public official when the Registry printed its statements. *Rinsley*, 446 F. Supp. at 856. In *Rinsley*, our court determined that the plaintiff was a public official when he worked as "Director of the Children's Section at Topeka State Hospital and Associate Clinical Professor of Psychiatry at the University of Kansas School of Medicine." *Id.* In particular, *Rinsley* noted plaintiff worked exclusively at public institutions and conducted research partially funded by the state of Kansas. *Id.* Our court determined that, in light of this case law, the plaintiff was a public official. *Id.* at 856–57 (citing *Adey v. United Action for Animals, Inc.*, 361 F. Supp. 457, 461–62 (S.D.N.Y 1973) ("a research scientist employed by NASA and involved in preparation for a space flight by a monkey was held to be a public official."); *Hutchinson v. Proxmire*, 431 F. Supp. 1311, 1327 (W.D. Wis. 1977) (finding that plaintiff was a public official when he worked as Director of Kalamazoo State Hospital, his research was funded by federal agencies, and he held himself out as president of a "nonprofit corporation that purported to act in the public interest.")).

Like the plaintiff in *Rinsley*, here, plaintiff served in a leadership position at a state funded institution. Plaintiff was Vice President of WSU, a large, state funded university in Kansas. The court thus concludes that plaintiff was a public official at all times relevant to his claims.

### b. Legitimate concern to the public

But the court's analysis cannot stop here. Though public officials do not have a right to privacy for the way they conduct themselves in office, *Rawlins*, 218 Kan. at 301, public officials maintain privacy rights in their private life, *See id.* at 300. Because the court determines

plaintiff was a public official, the court now must determine whether the printed statement was of legitimate concern to the public. *Werner*, 710 P.2d at 1256.

Plaintiff contends his impending termination was a "very private matter" and even he "was forbidden to speak about to anyone for months." Doc. 53 at 11. Plaintiff alleges the information about his impending termination affects his privacy interest in his reputation, character, and activities. *Id.* The Restatement (Second) of Torts § 652(D) gives the following examples of facts that are considered suitably private: "[s]exual relations . . . family quarrels, many unpleasant or disgraceful or humiliating illnesses, most intimate personal letters, most details of a man's life in his home, and some of his past history that he would rather forget." *Id.* The information that plaintiff was "leaving at the end of the academic year or sooner," is not the kind of private information entitled to the level of privacy protected by this court, as explained in the examples outlined by the Second Restatement of Torts (*i.e.*, information about sexual relations, family quarrels, illnesses, personal letters, or details about home life). The court concludes as a matter of law that plaintiff's impending termination was a subject of legitimate concern to the public, and plaintiff had no privacy rights in the information that the Registry printed.

Plaintiff's First Amended Complaint thus fails to state a publicity given to private life/invasion of privacy tort claim upon which relief can be granted.

### 2. Intrusion upon Seclusion

The court next considers plaintiff's theory that the Registry actionably intruded on his seclusion. An actionable intrusion upon seclusion claim under Kansas law requires the plaintiff to allege: (1) the defendant intentionally intruded, physically or otherwise, upon plaintiff's private affairs or concerns and (2) the intrusion would be highly offensive to a reasonable person.

*Werner*, 710 P.2d at 1254; *see also Valadez v. Emmis Commc'ns*, 229 P.3d 389, 480 (Kan. 2010). "Generally, the tort of intrusion upon seclusion is based upon the manner in which an individual obtains information." *Id.* at 1256. Examples of intrusion on seclusion include "installation of an electronic listening device in a tenant's bedroom," "taking pictures and peeking through windows with binoculars," and "unauthorized prying into the plaintiff's bank account." *Id.* (first citing *Hamberger v. Eastman*, 206 A.2d 239 (N.H. 1964); then citing *Souder v. Pendleton Detectives, Inc.*, 88 So.2d 716 (La. App. 1956); then citing *Brex v. Smith*, 146 A. 34 (N.J. Eq. 1929)). "The intrusion itself makes the defendant subject to liability, even though there is no publication or other use of any kind of the . . . information." *Id.*

Plaintiff does not allege in his First Amended Complaint, or argue in his Opposition to the Registry's Motion to Dismiss, that the Registry intruded on his seclusion to acquire the information it printed. Instead, he merely alleges "[the] Registry intentionally intruded upon the solitude or seclusion of plaintiff, or his private affairs or concerns." Doc. 48 at 19. But nothing in his First Amended Complaint describes how the Registry acquired the information it printed. Though plaintiff alleges the Registry's intrusions "were highly offensive to an ordinary person," he does not allege any additional facts about the intrusion. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not enough to state a claim for relief. *Iqbal*, 556 U.S. at 678. Plaintiff thus has not stated a claim for actionable intrusion upon seclusion which could justify granting him relief.

### 3. False Light

Finally, the court addresses plaintiff's claim that the Registry placed him in a false light. "One who gives to another publicity which places him before the public in a false light of a kind highly offensive to a reasonable man, is subject to liability to the other for invasion of his

13

privacy." *Dominguez v. Davidson*, 974 P.2d 112, 121 (Kan. 1999) (quoting *Rinsley v. Frydman*, 559 P.2d 334, 339 (Kan. 1977)). Under Kansas law, an actionable false light claim requires plaintiff to allege: "(1) publication of some kind to a third party; (2) the publication must falsely represent the person; and (3) the representation must be highly offensive to a reasonable person." *Dominguez v. Davidson*, 974 P.2d 112, 121 (Kan. 1999). Like defamation, truth is an absolute defense to a false light claim. *Id.* (citing *Castleberry v. Boeing Co.*, 880 F. Supp. 1435, 1442 (D. Kan. 1995)).

The Kansas Supreme Court has explained the term "publicity" as it is used for a false light claim. When used to describe this element of a false light claim, "publicity is different from the term publication" for a defamation claim. *Id.* Publication, when it is used as an element for a defamation claim, "includes any communication by the defendant to a third person." *Id.* (quoting *Ali v. Douglas Cable Commc'n*, 929 F. Supp. 1362, 1382 (D. Kan. 1996)). "Publicity, on the other hand, means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Id.* (internal quotation marks omitted). Publications "in a newspaper or a magazine, even of small circulation . . . or [a] statement made in an address to a large audience is sufficient to give publicity" for false light purposes. *Ali*, 929 F.Supp. at 1383. Plaintiff alleges that defendant published the statements in an announcement to its members, and that this was sufficient to satisfy the first element of a false light claim. Indeed, the front page of the Registry's website represents that its members include over 500 past university presidents, senior administrators, and deans located in 49 states. *See* http://www.registryinterim.com/our-members/ (last visited May 17, 2017). This suffices to qualify as "publicity" for a false light claim.

But even if plaintiff makes a sufficient showing on the first element, plaintiff has failed to state a false light claim upon which relief can be granted. Like defamation, "the defense . . . that the allegedly defamatory statements are opinions, not assertions of fact, is also available in a false light privacy action." *Rinsley*, 700 F.2d at 1307. "This is because '[u]nder the First Amendment there is no such thing as a false idea.'" *Id.* (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339–40 (1974)). "However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." *Id.*

As already discussed, the Registry's statement that the "current operation is too hierarchal and punishment-centered" is a statement of opinion, and not fact. *See* Part III.A.2. and authorities cited in it. Plaintiff thus has not stated a claim for false light upon which relief can be granted.

## VI. Conclusion

For reasons discussed above, the court grants the Registry's Motion to Dismiss (Doc. 50).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant The Registry for College and University Presidents' Motion to Dismiss First Amended Complaint or, in the Alternative, for Judgment on the Pleadings (Doc. 50) is granted under Rule 12(b)(6). Plaintiff's claims against the Registry are dismissed.

**IT IS SO ORDERED.**

**Dated this 31st day of May, 2017, at Topeka, Kansas.**

                                          **s/ Daniel D. Crabtree**
                                          **Daniel D. Crabtree**
                                          **United States District Judge**