## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| WADE ROBINSON                    ) | |
| )                                  | |
|       **Plaintiff,**   ) | |
| )                                  | |
| **vs.**                          ) | **Case No. 16-2138-DCC-GLR** |
| )                                  | |
| **WICHITA STATE UNIVERSITY, et al.**   ) | |
| )                                  | |
|       **Defendants.**   ) | |

### SECOND AMENDED COMPLAINT WITH JURY DEMAND

Comes Now Plaintiff Wade Robinson, and for his causes of action against Defendants Wichita State University, John Bardo and the Registry for College and University Presidents, a division of Collegiate Enterprise Solutions, LLC,[1] states as follows:

### Jurisdiction and Venue

1.    Plaintiff alleges violations of Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a); the Due Process Clause of the Fourteenth Amendment to the United States Constitution *via* 42 U.S.C. § 1983; and Kansas common law.

2.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.

3.    The Court has pendent jurisdiction over Plaintiff's state law claims because the claims arise and involve the same nexus of law and fact.

4.    Venue is proper with this Court pursuant to the provisions of 28 U.S.C. §1391(b) as the acts alleged in this Complaint were committed within this Judicial District.

---

[1]   Robinson hereby preserves for appeal his claims against the Registry, acknowledging that the Court has previously entered an order dismissing those claims. See Counts V and VI.

## Parties

5.      Plaintiff Wade Robinson, (hereinafter Robinson), who currently resides in Iowa, was at all relevant times an executive employee at Wichita State University, holding the titles Vice President for Campus Life and University Relations, Vice President for Student Engagement and Vice President of Student Affairs.

6.      Defendant Wichita State University (hereinafter "WSU"), is located in Sedgwick County, Kansas.  WSU is a recipient of federal financial assistance. WSU's administrative office is located at 1845 Fairmount Street, Wichita, Kansas 67260.  WSU may be served by serving the President of WSU, the state attorney general or an assistant attorney general.

7.      Defendant John Bardo (hereinafter "Bardo") is an individual residing at 1820 North Hillside Street, Wichita, KS 67214-2318 and he may be served at that address.  He is sued in his individual capacity.

8.      Defendant The Registry for College and University Presidents is a division of Collegiate Enterprise Solutions, LLC (hereinafter "Registry") which is a company organized under the law of the State of Massachusetts with a business address at 3 Centennial Drive, Peabody, Massachusetts 01960. The organization's registered agent is George J. Matthews whose address is 13 Hickory Hill, Manchester by the Sea, Massachusetts 01944.

9.      WSU is a state educational institution, considered a state agency and is a recipient of federal financial assistance.

## Background Facts

10.      Plaintiff Robinson began his employment with WSU as the Vice President for Campus Life & University Relations in July 2009.

11.      Bardo began his tenure as President at WSU on July 1, 2012.

2

12.     Robinson's duties and responsibilities included overseeing Title IX compliance, student conduct, housing and residence life, enrollment and related duties.

13.     WSU's General Counsel Ted Ayres was the Title IX Coordinator in 2013 and there were several other individuals at WSU who were deputy Title IX coordinators. The deputy Title IX Coordinator who conducted Title IX investigations of students reported to Robinson.

14.      On April 25, 2013, Plaintiff learned about an incident involving the alleged forcible rape by a member of the WSU men's basketball team shortly after the Final Four of the NCAA basketball tournament. This alleged rape had occurred on April 21, 2013.

15.     The President and Athletic Director did not disclose the alleged rape incident to Plaintiff, who was responsible to oversee Conduct and Title IX investigations and they did not disclose the alleged rape incident to the General Counsel, Ted Ayres, who was also the Title IX Coordinator, for four days.

16.     Plaintiff found out about the alleged rape incident at the same time that the Wichita Police Department made a public statement on April 25, 2013 at their morning press briefing.

17.     On April 27, 2013, Plaintiff requested a meeting with Bardo, the University President, as well as the Athletic Director and the General Counsel to raise his concerns about WSU's noncompliance with the substantive provisions of Title IX and explain that an investigation was necessary as the alleged rape may be a violation of Title IX.   While it was not his responsibility to pursue Title IX compliance in this instance Plaintiff opposed the fact that Bardo and the Athletic Director were trying to cover up the incident or treat this as an off-campus event.

3

18.     After meeting with Bardo and others on April 29, 2013, instead of the deputy Title IX coordinator conducting the investigation, Plaintiff took the lead on the investigation into the alleged rape incident because it involved the athletic department and a student basketball player.

19.     After his initial investigation, Robinson filed a formal Title IX complaint into the alleged rape incident by submitting an incident report to WSU.

20.     On May 8, 2013, Plaintiff asked the Associate Athletic Director for help getting the alleged perpetrator to talk with Plaintiff as part of the Title IX investigation because the alleged perpetrator was not responding in any way. The Associate Athletic Director told Plaintiff that it was not the time to bother this person and that they would help at the right time.

21.     On May 14, 2013, Bardo made the first threat on Plaintiff's employment.

22.     Francisco Gonzalez was hired by WSU as the Title IX Coordinator and Director of EEO and Affirmative Action in the fall 2013 or January 2014.

23.     In January 2014, Plaintiff learned about an allegation of forcible rape made by a female student against a member of the WSU men's track team and in February 2014, Robinson became involved with the investigation into this incident pursuant to Title IX, as it again involved the athletic department and one of its athletes.

24.     The Title IX Coordinator encouraged the alleged victim to file a formal statement, but the alleged victim had already left the WSU campus and would not do so at that time.

25.     Plaintiff met with the alleged perpetrator twice in March 2014 and again in July 2014 as part of his Title IX investigation.

26.     In March 2014, Plaintiff emailed the WSU President's Executive Team that he was going to begin an initiative with the campus Greek Community to emphasize ending sexual violence, which was part of NASPA and federal initiatives.

27.     On or about April 21, 2014, Plaintiff was again threatened by Bardo with termination of his job.

28.     On July 10, 2014, Plaintiff was demoted by Bardo from his position as Vice President for Campus Life and University Relations and removed from the Executive Team. His new position as Vice President of Student Engagement was to report to Provost Vizzini, not President Bardo. This demotion was announced to the campus on July 11, 2014.

29.     After his demotion, Robinson still served at the pleasure of Bardo and he continued to report to Bardo as well as others in WSU's administration.

30.     Plaintiff was moved to an inadequate office space and facility in August 2014.

31.     On January 12, 2015, Plaintiff reported to President Bardo, Provost Vizzini and General Counsel Ayres that the victim of the alleged rape in January 2014 was making a formal statement and that as a result, Plaintiff was going to proceed with a formal investigation as mandated by Title IX. Plaintiff also informed his superiors about a potential code of conduct violation involving members of the men's basketball team and that a reporter was looking at a story related to sexual assaults on campus and the VAWA/Clery/Title IX legislation.

32.     Three days later, on January 15, 2015, Plaintiff was verbally informed that his employment would be terminated effective June 30, 2015.

33.     On January 20, 2015, Plaintiff received permission from Vizzini to speak to Matt Johnston in Human Resources confidentially about how to transition and deal with his upcoming termination. When Plaintiff met with Johnston, Johnston told Plaintiff that he was being let go

because he "did not fit" and that the administration was watching him to find some reason for immediate termination.

34.     On February 2, 2015, Plaintiff received an anonymous note that stated: "Staff in the President's office are secretly telling people that Wade had been fired by President Bardo and will not be here after June.  Just thought you should know."

35.     On February 4, 2015, Plaintiff received another anonymous note that stated: "Wade, Some staff have heard that Andy Schlapp is telling people on and off campus you have been fired.  Nobody can believe this is the case but nobody wants to ask you what is going on. Two of us have heard this from the same person.  We are very concerned for you."

36.     Plaintiff met with Bardo on February 5, 2015, to discuss the reasons for his non-renewal, which Bardo stated concerned his displeasure with the Admissions process, that Robinson was too loyal to his staff, that Robinson was a big man with a loud voice, that he was perceived as a bully, and that the Shocker Hall costs got away from him, none of which were accurate or true.

37.     On March 2, 2015, Defendant Registry published an announcement for a Vice President for Student Affairs at Wichita State University to its members.

38.     The March 2, 2015, announcement stated "the incumbent is aware he is leaving at the end of academic year or sooner; the incumbent does not fit with the culture of the executive leadership team" and that "the current operation is too hierarchical and punishment-centered."

39.     Upon information and belief, Bardo engaged the Registry to provide an interim replacement and provided the information to the Registry for the announcement that the Registry made for Plaintiff's replacement.

40.     On March 4, 2015, Bardo met with the WSU Student Body President, Matt Conklin. When Conklin asked Bardo why Robinson was fired, Bardo responded with three statements: that "the conduct process overseen by Dr. Robinson was too punitive in nature rather than educational as it should be," that "the Student Affairs Division improperly allocated finances in supporting the institution's goals," and that "the Student Affairs Division is too bureaucratic in nature."

41.     On April 3, 2015, Plaintiff was provided written notice of the termination of his appointment effective June 30, 2015.

42.     On May 9, 2015, the Wichita Eagle newspaper published an article which stated that Defendant Bardo told Matt Conklin during their March 4, 2015 meeting that there were three reasons for Robinson's termination, namely that "the student process is too punitive in nature rather than educational as it should be; that student affairs had improperly allocated finances in supporting the institution's goals; and that student affairs is 'too bureaucratic in nature.'"

43.     In the May 9, 2015, Wichita Eagle article, the Defendant Registry was also quoted as stating with reference to Plaintiff that "The current operation is too hierarchical and punishment-centered."

44.     Upon information and belief, Bardo was behind the statements and comments to the newspaper which defamed Plaintiff and placed him in a false light.

45.     On June 1, 2015, Plaintiff learned during a telephone call with the Vice President of Student Affairs, Emeritus, Jim Rhatigan, that Bardo had stated to Rhatigan and other unidentified staff on the WSU campus that Robinson did not have the academic or work credentials to be the Vice President for Campus Life & University Relations when he interviewed and was hired in April and May of 2009.

46.     On or about June 1, 2015, Plaintiff learned during a conversation with the Provost and Senior Vice President for Academic Affairs, Anthony Vizzini that Bardo had stated to Vizzini and other unidentified individuals that Robinson did not have the credentials to be the Vice President for Campus Life & University Relations when he interviewed and was hired in April and May of 2009.

47.     Plaintiff's employment at WSU was terminated effective June 30, 2015.

48.     Plaintiff's appointment was terminated in retaliation for his pursuit of Title IX investigations at WSU.

49.     Plaintiff was subjected to retaliation as a consequence of his participation in complaints and investigations challenging noncompliance with Title IX with respect to the two alleged rape incidents involving student athletes.

50.     On July 10, 2015, Plaintiff made a request for records pursuant to the Kansas Open Records Act (KORA). This request concerned information related to Plaintiff's termination and the University's attempt to use the Registry to find an interim Vice President.

51.     Plaintiff did not receive the requested information for 17 weeks, or until November 5, 2015.

52.     After his termination, Plaintiff applied for twenty-four jobs for which he was not selected.

53.     Plaintiff finally obtained a job that was not comparable to the position he held at WSU, at Des Moines Area Community College in Ankeny, Iowa, earning more than $70,000 less per year.

54.     On November 15, 2015, Plaintiff filed a grievance in accordance with WSU policy.  In response to his grievance, WSU General Counsel David Moses summarily denied his

grievance as his appointment as an "Executive Unclassified Professional" ended with the completion of the 2015 fiscal year.  Mr. Moses confirmed Plaintiff's appointment and service was "at the pleasure of the chief executive officer" – Bardo, not Provost Vizzini.

55.     Plaintiff also filed a grievance against Provost Vizzini that was denied as well because WSU's General Counsel said that Plaintiff worked at the pleasure of the President.

56.     WSU and Bardo failed to follow the established policy for unclassified professionals to appeal termination of employment within an appointment period, and despite his request, Plaintiff was given no options or recourse to challenge his termination or clear his name.

57.     Plaintiff has suffered, and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; has suffered, and continues to suffer damage to his reputation, with attendant emotional distress, embarrassment, disgrace, humiliation, and loss of enjoyment of life; was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; has sustained loss of earnings and earning capacity; has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling as well as other economic hardships; and attorneys fees and costs.

## COUNT I
### (Liability under Title IX for Retaliation)
### (Defendant – WSU)

58.     Plaintiff hereby incorporates by reference each and every allegation heretofore pleaded.

59.     Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681 and its implementing regulation 34 C.F.R Part 106 prohibit discrimination based on sex and prohibit

retaliation against any individual who has made a complaint, testified, or participated in any manner in an investigation into alleged noncompliance with Title IX. *See* 34 C.F.R. § 100.7(e).

60.     Plaintiff was entitled to raise complaints concerning noncompliance and to participate in investigations concerning the alleged violations of Title IX and likewise was entitled to the protection against retaliation.

61.     Employees of federally funded educational institutions who raise complaints, or participate in investigations, concerning compliance with the substantive provisions of Title IX are protected from retaliation by 34 C.F.R. § 100.7(e) and enjoy an implied private right of action for money damages to vindicate their rights.

62.     Allegations of rape by student athletes create a hostile environment or discriminatory educational environment based on sex.

63.     Defendant WSU had actual and/or constructive knowledge and notice of the rape or sexual assault complaints alleged herein.

64.     Defendant WSU, through Defendant Bardo and other University employees and agents, ignored or disregarded Title IX's mandate for equal educational opportunities.

65.     Plaintiff engaged in a protected activity under Title IX when he complained that WSU administrators were facing potential liability for failing to take immediate and appropriate corrective action.

66.     Plaintiff is protected under Title IX from retaliation for opposing sexual harassment, sexual assault and rape.

67.     Plaintiff has a federal statutory right under Title IX to be free from retaliatory action for protected participation or opposition under Title IX in a federally funded educational facility.

10

68.     After receiving reports of the alleged rapes and harassment, Defendant WSU deliberately and intentionally retaliated against the Plaintiff.

69.     After reporting the initiative with the WSU campus Greek Community to end sexual violence, Defendant WSU deliberately and intentionally retaliated against the Plaintiff.

70.     Defendant retaliated against Plaintiff for his complaints that university officials covered up the alleged rape incident and prevented Plaintiff and the Student Affairs office from conducting a prompt Title IX investigation into the incidents.

71.     Defendant WSU, by and through its employees and agents, retaliated against Plaintiff for opposing the inaction of WSU to incidents of alleged rape by students at WSU.

72.     Plaintiff suffered adverse actions as a result of his protected activity when Defendant demoted him, moved and drastically downsized his office, took away significant duties and responsibilities, and ultimately terminated him.

73.     Defendant WSU, through its employees and agents, demonstrated deliberate indifference to Title IX's mandates for equal educational opportunities and no retaliation for protected activity.

74.     The aforesaid occurrences were the direct and proximate result of the negligence and carelessness of Defendant WSU and its employees and agents while acting within the scope and course of their employment.

75.     As a direct and proximate result of the Defendant's wrongful conduct, Plaintiff has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, loss of enjoyment of life, attorneys fees and costs.

76.     As a direct and proximate result of the Defendant's wrongful conduct, Plaintiff has sustained or will sustain expenses for medical and psychological treatment, therapy and counseling as well as other economic hardships.

77.     As a direct and proximate result of the Defendant's wrongful conduct, Plaintiff will sustain damages for lost pay and benefits in an amount commensurate with his compensation at WSU.

78.     Defendant's indifference and resulting action was wanton, willful and with reckless disregard and neglect of Plaintiff's rights, safety and well being, justifying the imposition of punitive damages.

## COUNT II
### (Liability under 42 U.S.C § 1983 – Due Process Liberty Interest)
### (Defendant Bardo)

79.      Plaintiff hereby incorporates by this reference each and every allegation heretofore pleaded.

80.     Plaintiff is a citizen of the United States of America.

81.     Plaintiff has a liberty interest in his good name and reputation as it affects his protected property interest in continued employment.

82.     42 U.S.C § 1983 provides for a private right of action against an individual when that individual is acting in an official capacity under color of state law. Specifically, 42 U.S.C § 1983 creates individual liability for persons acting under color of state law who violate a constitutional amendment or privilege, such as the Fourteenth Amendment's protection of liberty and property, or a federal statute, such as Title IX.

83.     As alleged herein, all conduct relative to this cause of action by Defendant Bardo occurred under color of state law.

84.     Plaintiff has a constitutionally protected liberty interest to be free from defamatory statements made in connection with the termination of his employment.

85.     Plaintiff has a constitutionally protected liberty interest to be free from arbitrary and capricious actions that stigmatize him and create or disseminate a defamatory impression regarding him or his conduct.

86.     The defamatory statements and retaliation, described herein, deprived Plaintiff of his constitutionally and federally protected rights described in the proceeding paragraphs. [2]

87.     The defamatory statements and retaliation, described herein, impugned Plaintiff's good name, reputation, honor, or integrity.

88.     The defamatory statements described herein were false.

89.     The defamatory statements described herein occurred in the course of terminating Plaintiff and foreclosed other employment opportunities for Plaintiff.

90.     The defamatory statements described herein were published.

91.     Plaintiff was denied due process in that he was not provided any grievance or hearing procedure with respect to his termination.

92.     Defendant Bardo is liable for depriving Plaintiff of his constitutionally and federally protected rights as described above.

93.     Defendant Bardo demonstrated deliberate indifference toward Plaintiff's constitutional rights by failing to take action that was obviously necessary to prevent or stop the defamation in violation of his rights under the due process clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §1983.

---

[2]   Robinson references his allegations that have been dismissed by the Court to preserve them for any appeal and not as an attempt to circumvent the Court's prior order.

94.     As a direct and proximate result of the defamation and retaliation to which Plaintiff was subjected, Plaintiff suffered past and future economic loss, damage to his reputation and good name; damage to his professional reputation; mental anguish, pain and suffering, inconvenience, humiliation, loss of enjoyment of life, attorneys fees and costs.

95.     Defendants' deprivation of Plaintiff's federal rights as described above is willful, wanton and malicious entitling plaintiff to punitive damages against the individual Defendant.

## COUNT III
### (Defamation)
### (Defendant Bardo)

96.     Plaintiff incorporates the above paragraphs in the Background Facts as if fully set forth herein.

97.     Defendant Bardo made several publications in 2015 to third parties, including the false and misleading statements which are more fully set out in the Background Facts.[3]

98.     These publications contained false statements of fact indicating that Plaintiff was punitive, hierarchical and bureaucratic, that he was financially irresponsible, and that he lacked credentials among other things.

99.     Defendant made these false statements with knowledge that they were untrue or with reckless disregard for whether the statements were true or false.

100.    Defendant Bardo's statements to Matt Conklin, Jim Rhatigan, Anthony Vizzini and other third parties were not privileged.

101.    Defendant Bardo's statements to Matt Conklin, Jim Rhatigan, Anthony Vizzini and other third parties were not true, and were not opinions.

102.    Defendant's statements tended to expose Plaintiff to contempt and ridicule.

---

[3]    Robinson references his allegations that have been dismissed by the Court to preserve them for any appeal and not as an attempt to circumvent the Court's prior order.

103.    Defendant made these statements with actual malice.

104.    As a result of Defendant's defamatory statements, Plaintiff's reputation was damaged.

105.    As a result of Defendant's defamatory statements, Plaintiff suffered actual damages.

106.    Defendant Bardo's statements were made in the course and scope of his employment with the Defendant WSU.

107.    Defendant Bardo's conduct was done with the participation, ratification, authority and consent of Defendant WSU.

108.    Defendant WSU is vicariously liable for such statements.

109.    Defendant's actions were reckless, for which punitive damages are appropriate.

110.    As a result of the above-described acts, Plaintiff has suffered, and continues to suffer damage to his reputation, with attendant emotional distress, embarrassment, disgrace, humiliation, and loss of enjoyment of life.

## COUNT IV
### (Invasion of Privacy)
### (Defendant Bardo)

111.    The Tenth Circuit has stated explicitly that parties are not required to "reallege a cause of action on which the district court has conclusively ruled." *Davis v. TXO Prod. Corp.*, 929 F.2d 1515, 1518 (10th Cir. 1991). Therefore, Robinson hereby preserves for appeal his Invasion of Privacy claim against Defendant Bardo, acknowledging that the Court has previously entered an order dismissing that claim. (ECF Doc. 63). The Invasion of Privacy claim against Defendant Bardo as set forth in Robinson's First Amended Complaint (ECF Doc. 48) is

incorporated herein by reference for the purpose of any appeal and not as an attempt to circumvent the Court's prior order.

## COUNT V
### (Defamation)
### (Defendant Registry)

112.    The Tenth Circuit has stated explicitly that parties are not required to "reallege a cause of action on which the district court has conclusively ruled." *Davis v. TXO Prod. Corp.*, 929 F.2d 1515, 1518 (10th Cir. 1991). Therefore, Robinson hereby preserves for appeal his Defamation claim against the Registry, acknowledging that the Court has previously entered an order dismissing the claim. (ECF Doc. 57). The Defamation claim against the Registry set forth in Robinson's First Amended Complaint (ECF Doc. 48) is incorporated herein by reference for the purpose of appeal and not as an attempt to circumvent the Court's prior order.

## COUNT VI
### (Invasion of Privacy)
### (Defendant Registry)

113.    The Tenth Circuit has stated explicitly that parties are not required to "reallege a cause of action on which the district court has conclusively ruled." *Davis v. TXO Prod. Corp.*, 929 F.2d 1515, 1518 (10th Cir. 1991). Therefore, Robinson hereby preserves for appeal his Invasion of Privacy claim against the Registry, acknowledging that the Court has previously entered an order dismissing the claim. (ECF Doc. 57). The Invasion of Privacy claim against the Registry set forth in Robinson's First Amended Complaint (ECF Doc. 48) is incorporated herein by reference for the purpose of appeal and not as an attempt to circumvent the Court's prior order.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court conduct a jury trial on his claims, enter judgment in his favor in an amount above the jurisdictional amount and against Defendants, grant such declaratory and injunctive relief as is necessary and appropriate to remedy the wrongs alleged herein; award Plaintiff actual damages, compensatory damages, punitive damages, reasonable attorneys' fees and expenses; and grant such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable by law.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates Kansas City, Kansas, as the place of trial for this matter.

Respectfully submitted,

BROWN & CURRY, LLC

/s/Sarah A. Brown
Sarah Brown, KS #12130
Dan Curry, KS #22750
406 W. 34th Street, Suite 810
Kansas City, MO 64111
(816) 756-5458
(816) 666-9596 (FAX)
sarah@brownandcurry.com
dan@brownandcurry.com

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on March 5, 2018 the foregoing document was served by the Court's electronic filing system upon the following parties of record:

Toby Crouse, #20030
Foulston Siefkin LLP
9225 Indian Creek Parkway, Suite 600
Overland Park, KS 66210-2000
(913) 498-2100
(913) 498-2101 FAX
Email: tcrouse@foulston.com

Boyd A. Byers, #16253
Foulston Siefkin LLP
1551 North Waterfront Parkway, Suite 100
Wichita, KS 67206-4466
(316) 291-9738
(866) 738-3152 FAX
Email: bbyers@foulston.com

Molly Gordon, #23134
Wichita State University
1845 Fairmount
201 Morrison Hall
Wichita, Kansas 67260
(316) 978-6791
Email: molly.gordon@wichita.edu

ATTORNEYS FOR DEFENDANTS WICHITA STATE UNIVERITY AND BARDO

and

Kevin D. Case, MO 41491; KS 14570
Patric S. Linden, MO 49551; KS 18305
2600 Grand Boulevard, Suite 300
Kansas City, MO  64108
Tel:  (816) 979-1500
Fax:  (816) 979-1501
kevin.case@caselinden.com
patric.linden@caselinden.com

ATTORNEYS FOR DEFENDANTS THE REGISTRY FOR COLLEGE AND
UNIVERSITY PRESIDENTS, A DIVISION OF COLLEGIATE ENTERPRISE SOLUTIONS, LLC

/s/ Sarah A. Brown_____
Attorney for Plaintiff